**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

**v.**

**WALL STREET PUBLISHING INSTITUTE, INC., d/b/a Stock Market Magazine, Defendant.**

**Civ. A. No. 82–2000.**

United States District Court, District of Columbia.

Aug. 1, 1986.

Joseph H. Sharlitt, Washington, D.C., for defendant.

Linda Bridgeman, Asst. Chief Trial Atty., S.E.C., Washington, D.C., for plaintiff.

## MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., Chief Judge.

Plaintiff, the Securities and Exchange Commission, brought this civil action against Wall Street Publishing Institute, Inc., seeking injunctions pursuant to the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b–3, 80b–6, the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the Securities Act of 1933, 15 U.S.C. § 77q(b). This Court, on July 12, 1984, granted Plaintiff's Motion for Summary Judgment and enjoined Defendant from committing further violations of these securities fraud provisions in its Stock Market Magazine. *SEC v. Wall Street Pub. Institute, Inc.,* 591 F.Supp. 1070 (D.D.C. 1984). On August 26, 1985, the Court of Appeals vacated this Court's Order of July 12, 1984, and remanded the case for further proceedings as appropriate in light of the Supreme Court's decision in *Lowe v. SEC,* 472 U.S. 181, 105 S.Ct. 2557, 86 L.Ed.2d 130 (1985).

Presently before the Court are two motions. The first is Plaintiff's Motion to Partially Reinstate Findings and Orders of Injunctions. This motion involves only the Counts of the Complaint involving the Securities Exchange Act of 1934 and the Securities Act of 1933. (The SEC does not seek reinstatement of the order of injunction entered against Defendant for violation of the Advisers Act.) The second motion is Defendant's Motion to Dismiss Complaint. Upon consideration of these motions, the oppositions thereto, and the oral argument heard on July 24, 1986, Defendant's motion shall be granted and Plaintiff's denied.

### Lowe v. SEC

*Lowe v. SEC,* 472 U.S. 181, 105 S.Ct. 2557, 86 L.Ed.2d 130 (1985), was an action brought by the SEC under the Investment Advisers Act. Defendant in that case published newsletters containing investment advice and commentary. The Court held that because the content of the newsletters was disinterested and because they were offered to the public on a regular schedule, they were *bona fide* within the exception in the Advisers Act for "the publisher of any

*bona fide* newspaper, news magazine or business or financial publication of general and regular circulation." 15 U.S.C. § 80b–2(a)(11)(D). In short, the Court held that the publisher of the newsletter was not an investment adviser.

█ Plaintiff in the present case argues that "the *Lowe* decision does not change the interpretation and regulation of fraud pursuant to the Securities Act and Exchange Act." Although *Lowe* dealt exclusively with the Investment Advisers Act, it is relevant to the determination of the two motions presently before the Court because it bears directly on the status of Stock Market Magazine and its publisher. Under the law as articulated by the Supreme Court, the record in this case clearly indicates that Stock Market Magazine is a *bona fide* publication with a general and regular circulation, and that its publisher, Defendant Wall Street Publishing Institute, Inc. is not an investment adviser. These determinations are important because (1) under section 10(b) of the Securities Exchange Act of 1934, there is no longer the requisite connection to the purchase or sale of a security to find Defendant in violation of the statute; and (2) although criminal sanctions under section 17(b) of the Securities Act of 1933 against Defendant may be available, the Court may not constitutionally enjoin the publication of Stock Market Magazine.

### Section 10(b)

In its Order of July 12, 1984, this Court found that the conduct of Defendant occurred in connection with the purchase or sale of a security as required by section 10(b). This determination was made because of a finding that "Defendant's false and misleading statements 'touch' securities transactions" because "[t]he information disseminated by Defendant may be expected to 'cause reasonable investors to buy or sell securities in reliance thereon.'" *SEC v. Wall Street Publishing Institute, Inc.,* 591 F.Supp. at 1088 (quoting *Superintendent of Insurance v. Banker's Life Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1972); *SEC v. Savoy*

*Industries, Inc.,* 587 F.2d 1149, 1171 (D.C. Cir.1978). After *Lowe,* because Defendant is a *bona fide* publication with a general and regular circulation and is excepted from the Investment Advisers Act, this reasoning no longer applies. Stock Market Magazine's representations are not "in connection with the purchase or sale of a security" and therefore Defendant has not violated section 10(b) of the Securities Exchange Act of 1934.

The S.E.C. has argued that Defendant has violated section 10(b) because it breached a duty to speak the full truth which arose when it undertook to supply any information. All of the cases Plaintiff cites, however, involve the parties to securities transactions. In those cases, ommitting facts can result in liability "where the defendant has revealed some relevant, material information even though he had no duty (i.e. a defendant may not deal in half-truths)." *First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1314 (5th Cir.1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978). None of these cases apply to the obligation of a *bona fide* financial publication such as Stock Market Magazine, however. Section 10(b) simply does not apply to Defendant in this case.

### Section 17(b)

■ Nothing in the Supreme Court's decision in *Lowe* alters this Court's findings that Defendant's actions violated section 17(b) of the Securities Act of 1933, which reads:

It shall be unlawful for any person, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, to publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof. 15 U.S.C. 77q(b).

The *Lowe* decision is significant, however, because by designating publications such as Stock Market Magazine as *bona fide* publications entitled to First Amendment rights, this Court is unable to fashion a civil remedy for the violation. This Court's injunction of July 12, 1986, can no longer withstand constitutional scrutiny under the First Amendment.

Although Plaintiff claims that in seeking injunctions which track the language of the Securities Exchange Act and the Securities Act it is not seeking to enjoin the publication of Stock Market Magazine, the effect of such an Order is clearly a prior restraint which violates the First Amendment. Although the Court's Order does not forbid publication entirely, it does place qualifications on publication which, if violated, could lead to punishment for contempt. Plaintiff is correct that any punishment would be imposed on Defendant after the fact of publication, but it is the injunction itself, which threatens this punishment before the fact of publication, which violates the First Amendment. The Supreme Court has stated:

"Only government allegations and proof that publication must inevitably, directly and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea can support even the issuance of an interim restraining order."

*New York Times Co. v. United States,* 403 U.S. 713, 726, 727, 91 S.Ct. 2140, 2147, 2148, 29 L.Ed.2d 822 (1971). The fraud committed by Defendant in this action does not even arguably reach this level of danger. Therefore, the injunctions sought by the SEC would be unconstitutional.

### CONCLUSION

This decision clearly does not stand for the proposition that Defendant, as a *bona fide* publication, can commit fraud at will. The SEC may still bring a criminal action against it under section 17(b) if it can show that Defendant's violations were willful. It is only before the fact restraints on free speech that are prohibited by the First Amendment.

An appropriate Order accompanies this memorandum.